BRONSON LAW OFFICES, P.C.
Counsel for the Debtor
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530 (PH)
(888) 908-6906 (Fax)
H. Bruce Bronson, Esq.
hbbronson@bronsonlaw.net

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:

                                      Case No.: 25-22735 (kyp)
                                       Chapter 11

Regina Vurchio a/k/a Regina D. Mullen,

                         Debtor.

-----------------------------------------------------------------X

**PLAN OF REORGANIZATION**

Regina Vurchio, debtor and debtor-in-possession (the "**Debtor**") proposes the following

Chapter 11 Plan of Reorganization (the "**Plan**") pursuant to Title 11 of the United

States Code:

**ARTICLE 1**
**DEFINITIONS**

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the

Debtor, the following terms shall have the respective meanings set forth below (such meanings to

be equally applicable to the singular and plural forms of the terms defined, unless the context

otherwise requires):

1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of

   administering this Chapter 11 case allowed under Sections 503(b) or 330(a) of the

Bankruptcy Code and that are entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including compensation for all professional services and reimbursement of expenses awarded by the Bankruptcy Court.

2. "**Allowed Claim**" means (1) a Claim timely filed before the Bar Date and (a) as to which no objection has been filed within the time fixed in the Plan or (b) as to which any objection that is filed has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court, (2) a Claim listed on the Bankruptcy Schedules and not designated as contingent, unliquidated or disputed, or (3) a Claim allowed pursuant to an order of the Bankruptcy Court.

3. "**Bankruptcy Code**" or "**Code**" shall mean the Bankruptcy Code, Title 11 U.S.C. §§ 101 *et. seq.* as amended from time to time and applicable to this case.

4. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or any other court exercising jurisdiction in this case.

5. "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto, filed by the Debtor pursuant to Bankruptcy Rule 1007.

6. "**Bar Date**" means February 1, 2026, the deadline by which proofs of Claim are required to be filed with the Clerk of the Bankruptcy Court in this case.

7. "**Cash**" means cash or cash equivalent (a) of the Reorganized Debtor on hand as of the Effective Date and/or(b) realized from the Debtor's or Reorganized Debtor's business operations or employment following the Effective Date.

8. "**Claim**" shall mean a right to payment as set forth in Section 101(5) of the Bankruptcy Code.

-2-

9. "**Claimant**" shall mean the holder of a Claim.

10. "**Confirmation**" means approval of this Plan by the Confirmation Order of the Bankruptcy Court following a hearing and notice thereof in accordance with the Bankruptcy Code and Bankruptcy Rules.

11. "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

12. "**Confirmation Hearing Date**" shall mean the date set by the Bankruptcy Court for the hearing on confirmation of the Plan.

13. "**Confirmation Order**" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

14. "**Debtor**" means the individual Regina Vurchio.

15. "**Debtor-in-Possession Account**" or "**DIP Account**" means the bank account(s) the Debtor established pursuant to U.S. Trustee guidelines shortly after filing for bankruptcy.

16. "**Disputed Claim**" means:

(a) any Claim that is listed in the Debtor's Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and

(b) any filed Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court and such Claim has not become an Allowed Claim.

17. "**Effective Date**" means the date upon which the Confirmation Order becomes a Final Order.

18. "**Final Order**" means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review or rehearing has been waived or (b) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

19. "**Government Bar Date**" means the deadline by which governmental units have to file a proof of claim with the clerk of the Court in this case, which is February 1, 2026.

20. "**Impaired**" means impairment of a class of Claims under Section 1124 of the Bankruptcy Code.

21. "**Petition Date**" means August 5, 2025, the date on which the Debtor filed her voluntary bankruptcy petition.

22. "**Plan**" means this Chapter 11 plan of reorganization filed by the Debtor.

23. "**Priority Claim**" means all Claims that are entitled to priority pursuant to Bankruptcy Code Section 507(a), with the exception of Administrative Expense Claims.

24. "**Priority Tax Claim**" means all Claims that are entitled to priority pursuant to Bankruptcy Code Sections 502(i) and 507(a)(8).

25. "**Pro Rata**" means with respect to a class member, in the same proportion as the amount of such member's Allowed Claim over the total Allowed Claims in such class.

26. "**Property**" means the Debtor's residence at 811 North Barry Avenue, Mamaroneck, NY 10543.

27. "**Reorganized Debtor**" means the Debtor after the Effective Date.

28. "**Rushmore**" means the servicer of the Secured Creditor.

29. "**Secured Claim**" means a Claim secured by a lien, judgment lien, mortgage or security interest on property of the Debtor's estate to the extent of the value of the property of the Debtor's estate securing such Claim, and any valid and enforceable right of setoff.

30. "**Secured Creditor**" means U.S. Bank Trust National Association, not in its individual capacity, but solely in its capacity as Trustee for Citigroup Mortgage Loan Trust 2021-RP5 serviced by Rushmore Servicing.

31. "**Secured Mortgage**" means the mortgage encumbering the Property held by the Secured Creditor.

32. "**Unsecured Claim**" means a Claim that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Priority Tax Claim.

33. "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim.

34. "**U.S. Trustee Fees**" means all fees payable pursuant to 28 U.S.C. § 1930, and statutory interest thereon.

All rules of construction contained in Section 102 of the Bankruptcy Code apply in the construction of the Plan.

**ARTICLE 2**
**UNCLASSIFIED ADMINISTRATIVE EXPENSE**
**CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims and Priority Tax Claims, which shall be afforded the following treatment:

1. **Administrative Expense Claims**. All Allowed Administrative Expense Claims shall be paid in full in Cash on the later of the Effective Date, and entry of an order of the Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties. The

primary Administrative Expense Claims could consist of fees approved by the Court that are payable to bankruptcy counsel and post-petition taxes. The amounts of Administrative Expense Claims are not currently known and are expected to consist primarily of the Debtor's legal fees.

2. **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid in full in Cash on the Effective Date of the Chapter 11 Plan as provided in their respective proofs of claim. There is one priority tax claim from the Internal Revenue Service (Claim No. 1) in the amount of $94.54.

3. **U.S. Trustee Fees.** Any unpaid U.S. Trustee Fees shall be paid in Cash on the Effective Date.

**ARTICLE 3**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims, other than Administrative Expense Claims and Priority Tax Claims.

**Treatment-** The Allowed Class 1 Priority Claims, if any, shall be paid in full in Cash on the Effective Date. There are no known Class 1 Priority Claims.

**Right to Vote.** Class 1 is not Impaired under the Plan and therefore is not entitled to vote to accept or reject the Plan.

2. **Class 2-Allowed Secured Claims.** Class 2 consists of all Allowed Secured Claims. Class 2 consists of any Allowed Secured Claim for the Mortgage on the Debtor's residence (the "Mortgage") held by the Secured Lender in the Allowed Amount of approximately $812,717.21. Debtor will pay this Allowed Secured Claim at the contract rate of $4,998.80 per month. Non-interest-bearing arrears of $54,398.95, will be paid without interest over 415 months. Interest bearing arrears of $111,129.31 will be amortized over 415 months, which is approximately the

-6-

remaining term of the Mortgage beginning on the Effective Date at the rate of $811.25 per month.

The Mortgage matures on about January 1, 2061. The chart below summarizes the payment to be

made.

| Claimant | POC/ Petition | Claim Amount Allowed | Monthly Payment |
|---|---|---|---|
| Secured Lender or Rushmore | Claim #2 | **$812,717.21** Consisting of: $677,090.07 principal (paid at contract rate) of which $22,456.34 is principal due pre-petition. $54,398.95 interest (paid over 415 months/no interest-$132 per month) $22,456.34 of principal arrears $71,850.99 Escrow deficiency  $7,444.78 projected escrow shortfall  $ 9,377.20 Fees and costs (total of **$111,129.31** amortized over 415 months which equals $811.25 per month) Matures January 1, 2061 | Contract Rate: $ **4,988.80** (interest bearing principal @ 3.375% per annum per modification) **$132** (non-interest-bearing arrears) **$811.25** (interest bearing arrears at *Till* rate-6.75% (prime) plus 1.5%=**8.25%**) **$5,932.05** Total per month[1] |

---

[1] The Debtor will make payments at the contract rate plus the arrears payment until the Mortgage comes due in 2061, unless sold or refinanced earlier. In the event that any amounts are still owed by Debtor on the maturity date, they will be due at that time.

**Treatment:** Class 2 will be paid as set forth in the chart above.

**Right to Vote.** Class 2 claims are not Impaired under the Plan and are therefore not entitled to vote to accept or reject the Plan, as such Claims will be paid at the contract rate with prepetition arrears paid over approximately 415 monthly payments (through the maturity date of the loan) pursuant to the Plan.

3.      **Class 3-Allowed Unsecured Claims.** Class 3 Allowed Unsecured Claims consist of the unsecured portion of the IRS claim of $92.20, an amount owed to Greenwich Hospital of $6,000 and a claim from Carol Vurchio of $15,000. These Claims will be repaid in equal monthly payments over five years (except for the IRS claim which will be paid on the Effective Date). The total monthly payments for these unsecured Claims will be $350 per month.

**Treatment-**The Class 3 Allowed Unsecured Claims will be paid monthly in equal installments over five years from the Effective Date without interest.

**Right to Vote.** Class 3 is Unimpaired and not entitled to vote to accept or reject the Plan. To the extent there are any holders of claims that were listed in the Schedules as disputed that have failed to file a proof of claim, they will not be entitled to a distribution and are not included herein. Unless otherwise ordered by the Bankruptcy Court for cause, only the Debtor shall have standing to file and prosecute objections to Claims. All such objections shall be filed and served no later than 90 days after the Effective Date in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Any disputed Claims will be reserved until resolved.

### ARTICLE 4
### IMPLEMENTATION OF THE PLAN

Payments to holders of Allowed Claims under the Plan will be made by the Debtor/Reorganized Debtor from (a) Cash on hand as of the Effective Date; and (b) Cash realized from the Debtor's/Reorganized Debtor's wages and her husband's wages and income.

Professional fees for services rendered and expenses incurred by the Debtor's attorney subsequent to the Effective Date in connection with the Plan or the Debtor's/Reorganized Debtor's chapter 11 case may be paid by the Debtor without prior court approval to the extent that Section 1123(a)(6) of the Bankruptcy Code is applicable.

The Plan may be altered or modified by the Debtor at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, which authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements therein.

## ARTICLE 5
## PROVISIONS GOVERNING DISTRIBUTIONS

1. **Disbursements.** All distributions under the Plan shall be made by the Debtor/Reorganized Debtor as provided in Article 3 hereof. Payments to be made monthly under the Plan will be made in Cash on or about the first of each month.

2. **Rights and Powers of the Debtor.** The Debtor/Reorganized Debtor shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform their duties under the Plan, (ii) make all distributions contemplated by the Plan, (iii) prosecute, settle and enforce any objections to Claims or other preserved causes of action on behalf of the Debtor's estate as set forth in the Plan, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

3. **Claim Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court for cause, after the Effective Date only the Debtor shall have standing to file and prosecute objections to Claims.

All such objections shall be filed and served no later than 90 days after the Effective Date in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

4. **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim under the Plan unless and until such Disputed Claim becomes an Allowed Claim. Instead, any monies that otherwise would be paid if a Disputed Claim were Allowed shall be retained by the Debtor/Reorganized Debtor until such time as the Claim is finally Allowed, at which time such withheld Cash shall be paid to the holder of such Allowed Claim or, to the extent that such Disputed Claim is not Allowed, Pro Rata to the holders of Allowed Class 3 Unsecured Claims.

5. **Undeliverable Distributions.** If a distribution to the holder of any Allowed Claim is returned as undeliverable, no further distribution hereunder shall be made to such Claimant unless such Claimant notifies the Debtor in writing of its correct address within 180 days after the date of such distribution. Any undeliverable distribution shall be distributed Pro Rata to the remaining holders of Allowed Class 3 Claims. Debtor shall make reasonable efforts to locate holders of Allowed Claims.

### ARTICLE 6

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Executory Contracts and Unexpired Leases.** To the extent the Debtor is a party to any executory contracts or unexpired leases which have not otherwise been assumed or rejected prior to the Effective Date, the Confirmation Order shall constitute an Order authorizing the assumption of such Executory Contracts or unexpired leases pursuant to Section 365 of the Bankruptcy Code.

In the event any lease or executory contract is to be assumed that is not paid currently, the

Debtor will, as a condition of assumption, cure the default by making payment of the amounts owed. Any party objecting to the assumption or cure amount shall have until ten days prior to the Confirmation Hearing date to oppose such assumption or cure amount. The Debtor is not aware of any executory contracts or unexpired leases on which it is a lessee and accordingly believes that he owes no cure amounts under Sections 365 of the Bankruptcy Code.

**This paragraph constitutes notice to any party having an executory contract or unexpired lease with Debtor, that Debtor will pay no cure amounts unless (a) the non-debtor party files and serves a statement setting forth the cure amount and objecting to the Plan on or before the date to object to Confirmation of the Plan or (b) the Court awards such cure amount.**

## ARTICLE 7

## MISCELLANEOUS PROVISIONS

1. **Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of implementation of the Plan.

2. **Compliance with Tax Requirements.** In connection with the Plan, the Debtor/Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

3. **Due Authorization by Creditors.** Each and every holder of an Allowed Claim who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan on account of such Claim and that there are no outstanding liens, encumbrances,

commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

4. **Filing Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

5. **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

6. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

7. **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

8. **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) to the Debtor/Reorganized Debtor at: Bronson Law Offices, P.C., 480 Mamaroneck Avenue, Harrison, NY 10528, Attention H. Bruce Bronson, Esq.;

(b) if to any Claimant at (i) the address set forth on the respective proofs of Claim filed by such Claimants; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor/Reorganized Debtor after the Effective Date; or (iii) the

address reflected in the Bankruptcy Schedules if no proof of Claim is filed and the Debtor

has not received a written notice of a change of address; and

(c)     if to any entity that has filed a notice of appearance, at the address(es) set

forth on such notice of appearance.

9.  **Governing Law.** The rights and obligations arising under the Plan shall be governed

by, and construed and enforced in accordance with, the Bankruptcy Code and

Bankruptcy Rules and the laws of the State of New York, as applicable.

10. **Other actions.** Nothing contained herein shall prevent the Debtor from taking such

action as may be reasonably necessary to carry out this Plan, although such actions

may not specifically be provided for within the Plan.

11. **Severability.** In the event any provision of the Plan is determined to be unenforceable

such determination shall in no way limit or affect the enforceability and operative

effect of any or all other provisions of the Plan.

12. **Causes of Action.** The Debtor is not aware of any causes of action that her bankruptcy

estate may have, including actions under Chapter 5 of the Bankruptcy Code.

Nevertheless, he fully reserves her right to pursue any causes of action post

confirmation, and any setoff rights arising thereunder.

13. **Replacement Liens.** The Secured Creditor shall receive replacement liens without

further action on its part to the extent necessary to secure its interest against the

Reorganized Debtor. The Secured Creditor shall be entitled to file all necessary

documents to protect its secured interest, and the Debtor will cooperate with all

reasonable requests for this purpose.

## ARTICLE 8
## DISCHARGE OF DEBTS

Confirmation of the Plan does not discharge any debt provided for in the Plan until the

Bankruptcy Court grants a discharge on completion of all payments under the Plan, or as

otherwise provided in Section 1141(d)(5) of the Bankruptcy Code. The Debtor will not be

discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code,

except as provided in Rule 4007 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 9
## LIMITATION OF LIABILITY; INJUNCTION

To the extent permitted by Section 1125(e) of the Bankruptcy Code, upon the Effective

Date, neither the Debtor nor her counsel or agents shall have incurred or shall incur any liability to

any holder of a Claim or any other person or entity for any act or omission in connection with, or

arising out of, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the

pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the

Plan or the property to be distributed under the Plan, except for willful misconduct, gross

negligence, self-dealing or breach of fiduciary duty. Nothing herein shall abrogate applicable

disciplinary rules.

At the Confirmation Hearing, the Debtor will be seeking an injunction as of the Effective

Date protecting the Debtor/Reorganized Debtor and her estate and assets, except as provided in

the Plan, until the entry of an order by the Bankruptcy Court granting the Debtor a discharge upon

performance of all their duties and obligations under the Plan. The injunction will be sought

because under the Bankruptcy Code [11 U.S.C. §1141(d)(5)] where, as here, the debtors in a

chapter 11 case are individuals, confirmation of the Plan does not discharge any debt provided for

in the plan until the Bankruptcy Court grants a discharge upon completion of all payments under

the plan. Therefore, at the Confirmation Hearing, the Debtor will request the Bankruptcy Court to enter a Confirmation Order providing that, as of the Effective Date, as to every holder of a debt or Claim against the Debtor, such holder shall be enjoined from interfering with the Debtor's/Reorganized Debtor's ability to carry out the terms of the Plan or enforcing any remedy against the Debtor or her estate or property with respect to any Claim. The order will further provide that in the event of a default by the Debtor/Post-Confirmation Debtor under the Plan, a Claimant may make an appropriate application to the Bankruptcy Court seeking relief from such injunction.

**ARTICLE 10**
**RETENTION OF JURISDICTION**

After the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until this Chapter 11 bankruptcy case is closed to perform the following actions:

(a) Ensure that the Plan is fully consummated;

(b) Resolve all matters arising under or relating to the Plan, including, without limitation, its enforcement and interpretation;

(c) Allow, disallow, determine, liquidate or classify, any Claims;

(d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in this bankruptcy case;

(e) Resolve any motions or applications still pending prior to the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with this bankruptcy case, including an order granting the Debtor's discharge upon certification of the completion of all distributions under the Plan; and

(g) Enter a discharge order and Final Decree concluding this bankruptcy case.

## ARTICLE 11
## CLOSING THE CASE

1.      **Bankruptcy Fees.** All fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid through the entry of a Final Decree, or conversion or dismissal of the Debtor's Chapter 11 case, whichever is earlier.

2.      **Post-Confirmation Reports.** After Confirmation, the Debtor shall file quarterly status reports regarding the implementation of the Plan and schedule such status conferences as may be necessary until the case is closed.

3.      **Closing the Case.** Within 14 days following the full administration of the Debtor's estate, the Debtor shall file on notice to the United States Trustee, an application and a proposed order for a Final Decree pursuant to Bankruptcy Rule 3022. The Debtor may close the case after the Effective Date and reopen the case when their estate is fully administered in accordance with this Plan, in order to obtain a discharge.

**DATED:** Harrison, New York
            April 8, 2026

*/s/ Regina Vurchio*
Regina Vurchio

                                        BRONSON LAW OFFICES, P.C.

                                        By:  */s/ H. Bruce Bronson*
                                        H. Bruce Bronson
                                        Bankruptcy Counsel to the
                                        Debtor and Debtor-in-Possession