**THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE COURT WILL CONSIDER APPROVAL OF THIS DISCLOUSRE STATEMENT AT A HEARING TO DETERMINE IF IT CONTAINS ADEQUATE INFORMATION AS PROVIDED IN 11 U.S.C. § 1125.**

BRONSON LAW OFFICES, P.C.
Counsel for the Debtor
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530 (PH)
(888) 908-6906(Fax)
H. Bruce Bronson, Esq.
hbbronson@bronsonlaw.net

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
In re:

                                              Case No.: 25-22735 (kyp)

REGINA VURCHIO A/K/A REGINA D. MULLEN,        Chapter 11

            Debtor.

----------------------------------------------------------------X

## DISCLOSURE STATEMENT

Regina /vurchio a/k/a Regina D. Mullen, the debtor and debtor-in-possession (the "Debtor") submits this Disclosure Statement (the "Disclosure Statement"), pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"), in connection with her request for confirmation of the Debtor's accompanying Plan of Reorganization of even date (the "Plan").

Unless otherwise defined, all capitalized terms contained in the Plan shall have the same meaning for purposes of this Disclosure Statement. The Plan has been filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and is attached hereto as **Exhibit "A."** The Bankruptcy Court approved this Disclosure Statement, with non-material changes, as containing "adequate information" of a kind, and in sufficient detail, to

enable a hypothetical reasonable investor typical of the Debtor's creditors to make an informed

decision whether to accept or reject the Plan.  The Court will consider Confirmation of the Plan

on ***** ,2026.

Accompanying this Disclosure Statement are copies of the following documents (**Exhibits

A, B, C, D and E**):

    A.  **The Plan;**
    B.  **Financial Projections of the Debtor;**
    C.  **Amortization Schedule;**
    D.  **Loan Modification Agreement; and**
    E.  ***Ridgewood Sav. Bank v. DePietto (In re DePietto)*, 2021 U.S. Dist. LEXIS 144001.**

## PLAN SUMMARY

The Plan is designed as a mechanism for the financial reorganization of Debtor. The

Debtor filed this case to save her home from foreclosure and to propose a Plan in which U.S.

Bank Trust National Association, not in its individual capacity, but soley in its capacity as Trustee

for Citigroup Mortgage Loan Trust 2021-RP5 serviced by Rushmore Servicing ("Secured

Lender" or "Rushmore"), the secured creditor holding a mortgage upon the Debtor's residence,

will receive payment of all post-obligations as well as payment of the mortgage arrears in full

over its remaining term.  The Debtor will make payments to the holders of Allowed Claims in the

classes set forth herein.  Pursuant to the Plan, there will be three Classes of creditors as follows:

**Class 1**: consists of all Allowed Priority Claims except Priority Tax Claims.

**Class 2**: consists of all Allowed Secured Claims

**Class 3**: consists of all Allowed Unsecured Claims.

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense

Claims and Priority Tax Claims have not been classified and thus are excluded from the preceding

classes.

## THE CONFIRMATION PROCESS

### The Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court will consider the Debtor's Plan for Confirmation on ******2026 (the "Confirmation Hearing Date"). The Bankruptcy Court has directed that objections, if any, to approval of the Plan be filed and served **so as to be received** seven days before the Confirmation Hearing Date.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements of the Bankruptcy Code have been satisfied. The Debtor believes that the Plan satisfies all applicable requirements of Section 1129(a) of the Bankruptcy Code.

### The Purpose of this Disclosure Statement

This Disclosure Statement and the accompanying Ballot, if any creditor is entitled to vote, are being furnished to the Debtor's known creditors pursuant to Section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Chapter 11 Plan from those entitled to vote on the Plan. The Plan is incorporated herein by reference. You should read this Disclosure Statement and the Plan carefully. In any conflict between the Plan and this Disclosure Statement, the Plan will control. The Debtor contends that there are no impaired classes and accordingly no votes are required.

### Disclaimer

**NO PERSON MAY BE GIVEN ANY INFORMATION OR MAKE ANY REPRESENTATIONS NOT CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITIATON OF ACCEPTANCES OF THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THAT DATE. ALL CREDITORS SHOULD READ CAREFULLY AND CONSIDER FULLY THE DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS THE EQUVIALENT OF A STATEMENT MADE IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS.**

**THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND FINANCIAL INFORMATION.**

**ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED FROM THE DEBTOR'S BOOKS AND RECORDS AND PUBLIC PLEADINGS. ALTHOUGH DILIGENT EFFORTS HAVE BEEN MADE TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION IS WITHOUT SOME INACCURACY OR OMISSION.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.**

**THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTOR IS BASED UPON AN ESTIMATION OF SUCH VALUE. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL AND TAX ADVISORS IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.**

**THE DISCLOSURE STATEMENT ORDER, A COPY OF WHICH ACCOMPANIES THIS DISCLSOURE STATEMENT, SPECIFIES THE DEADLINES, PROCEDURES, AND INSTRUCTIONS FOR VOTING TO ACCEPT OR REJECT THE PLAN AND FOR FILING OBJECTIONS TO FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND/OR CONFIRMATION OF THE PLAN**

## VOTING INFORMATION

Because there are no Impaired classes, no voting is required for Confirmation of the Plan and no ballots will be circulated.

**INTRODUCTION**

The Debtor filed this bankruptcy case (the "Petition") on August 5, 2025 (the "Petition Date"). The Debtor lives with her husband and family and has regular income with which to fund the Plan. The Debtor's household income is sufficient to maintain their regular household expenses, including post-petition mortgage payments to Rushmore, as well as fund a plan that will repay all mortgage arrears over the remaining term of the mortgage note, as modified by a loan modification dated February 1, 2021. The Debtor has minimal unsecured debts and asserts that she can resolve her financial situation by reorganizing under Chapter 11.

The Debtor previously filed a chapter 7 case under the Bankruptcy Code on November 1, 2024, that was discharged March 7, 2025 (case no.:24-22963). Accordingly, the Debtor is not entitled to a discharge and will pay all her debts in full. The Debtor was pursuing a loan modification; however, the Debtor has now decided to cure the mortgage arrears over the remaining term of the mortgage. Under the Plan the Debtor will pay the Secured Lender at the contract rate which on the Petition Date was $4,998.80 per month (which includes taxes and insurance) plus $943.25 per month to repay the arrears on its Allowed Secured Claim over 415 months beginning on the Effective Date of the Chapter 11 Plan which will cure the deficiency[1].

Under well-established case law in this district, a chapter 11 debtor may cure mortgage arrears over the life of the mortgage loan and treat such claim as unimpaired without providing the accelerated payment, provided that the Debtor cures the default and reinstates the maturity of the claim. *TLA Claimholders Grp. v. LATAM Airlines Grp. S.A. (In re LATAM Airlines Grp.*

---

[1] The Mortgage maturity date is January 1, 2061 (415 month assuming a June 1, 2026, Effective Date of a Plan). The Mortgage accrues interest at 3.75% per annum and has a principal balance of 677,090.07, as of the Petition Date. A copy of the Mortgage Modification is attached as "**Exhibit D**". Escrow deficiency of $71,850.99 for fees advanced, $9,377.20 for fees and costs and $54,398.95 for interest.

*S.A.)*, 55 F.4th 377, 385-86 (2d Cir. 2022); *see also Ridgewood Sav. Bank v. DePietto (In re DePietto)*, No. 20-CV-8043 (KMK), 2021 U.S. Dist. LEXIS 144001, at 20-21 (S.D.N.Y. Aug. 2, 2021) (citing *In re LaPorta,* 578 B.R. 792 (Bankr. N.D. Ill. 2017)); *see also In re: Robert A. Lauridsen*, Bankr. S.D.N.Y (22-35165-cgm) (Bankruptcy Court confirmed plan over secured creditor objection made on the basis that curing prepetition arrears over 18 years impaired the secured claim; in confirming the plan over said objection, the Bankruptcy Court (J. Morris) found that the "Plan has no impaired creditors").

Here, the pre-petition arrears total $163,605.86 of which approximately $52,476.55 is attributable to interest.  The portion of arrears attributable to interest will not accrue additional interest under the Plan (based on New York law), resulting in a non-interest-bearing payment of $126.45 per month. The balance of the arrears ($111,129.31)—attributable to principal payments (principal due, plus prepetition fees and escrow advanced—will bear interest at the *Till* rate estimated to be prime plus 1.5% (6.75% plus 1.5%=8.25%) per annum payable over 415 months, resulting in a payment of $811.25 per month.  Accordingly, the total payment to be made to cure the arrears over 415 months is $937.70 ($811.25 plus $126.45). A copy of the amortization calculation is attached as "**Exhibit C**".  To the extent that there are post-Petition arrears they will be paid on the Effective Date. Therefore, the total monthly payment to the Secured Lender will be $5,936.50.

### SIGNIFICANT EVENTS DURING CHAPTER 11 CASE

The Debtor and her husband have continued to earn income since the Petition Date. The last date to file claims was February 1, 2026 (the "Bar Date") which is also the government bar date. The bar date order was signed on December 17, 2025 [ECF Dkt. No. 23] (the "Bar Date Order").

The Debtor has filed all monthly operating reports required to be filed and all U.S. Trustee

fees have been paid.

**PLAN SUMMARY**

**UNCLASSIFIED ADMINISTRATIVE EXPENSE
CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify

Administrative Expense Claims and Priority Tax Claims, which shall be afforded the following

treatment:

1.  **Administrative Expense Claims**. All Allowed Administrative Expense Claims shall

    be paid in full in Cash on the later of the Effective Date, and entry of an order of the

    Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties. The

    primary Administrative Expense Claims could consist of fees approved by the Court

    that are payable to bankruptcy counsel and post-petition taxes. The amounts of

    Administrative Expense Claims are not currently known and are expected to consist

    primarily of the Debtor's legal fees.

2.  **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid in full in Cash on the

    Effective Date of the Chapter 11 Plan as provided in their respective proofs of claim.

    There is one priority tax claim from the Internal Revenue Service (Claim No. 1) in the

    amount of $94.54.

3.  **U.S. Trustee Fees.** Any unpaid U.S. Trustee Fees shall be paid in Cash on the

    Effective Date.

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

1.      **Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority

Claims, other than Administrative Expense Claims and Priority Tax Claims.

   **Treatment-** The Allowed Class 1 Priority Claims, if any, shall be paid in full in Cash on

the Effective Date. There are no known Class 1 Priority Claims.

**Right to Vote.** Class 1 is not Impaired under the Plan and therefore is not entitled to vote to accept or reject the Plan.

2. **Class 2-Allowed Secured Claims.** Class 2 consists of all Allowed Secured Claims. Class 2 consists of any Allowed Secured Claim for the Mortgage on the Debtor's residence (the "Mortgage") held by the Secured Lender in the Allowed Amount of approximately $812,717.21. Debtor will pay this Allowed Secured Claim at the contract rate of $4,998.80 per month. Non-interest-bearing arrears of $54,398.95, will be paid without interest over 415 months. Interest bearing arrears of $111,129.31 will be amortized over 415 months, which is approximately the remaining term of the Mortgage beginning on the Effective Date at the rate of $811.25 per month. The Mortgage matures on about January 1, 2061. The chart below summarizes the payment to be made.

| Claimant | POC/ Petition | Claim Amount Allowed | Monthly Payment |
|---|---|---|---|
| Secured Lender or Rushmore | Claim #2 | **$812,717.21** <br> Consisting of: <br> $677,090.07 principal (paid at contract rate) of which $22,456.34 is principal due pre-petition. <br><br> $54,398.95 interest (paid over 415 months/no interest-$132 per month) <br><br> $22,456.34 of principal arrears <br> $71,850.99 Escrow deficiency <br> $7,444.78 projected escrow shortfall <br> $ 9,377.20 Fees and costs <br> (total of **$111,129.31** amortized over 415 months which equals $811.25 per month) <br><br> Matures January 1, 2061 | Contract Rate: <br> $ **4,988.80** (interest bearing principal @ 3.375% per annum per modification) <br><br> **$132** (non-interest-bearing arrears) <br><br> **$811.25** (interest bearing arrears at *Till* rate-6.75% (prime) plus 1.5%=**8.25%**) <br><br> **$5,932.05** Total per month[2] |

**Treatment:** Class 2 will be paid as set forth in the chart above.

---

[2] The Debtor will make payments at the contract rate plus the arrears payment until the Mortgage comes due in 2061, unless sold or refinanced earlier. In the event that any amounts are still owed by Debtor on the maturity date, they will be due at that time.

**Right to Vote.** Class 2 claims are not Impaired under the Plan and are therefore not entitled to vote to accept or reject the Plan, as such Claims will be paid at the contract rate with prepetition arrears paid over approximately 415 monthly payments (through the maturity date of the loan) pursuant to the Plan.

3.    **Class 3-Allowed Unsecured Claims.** Class 3 Allowed Unsecured Claims consist of the unsecured portion of the IRS claim of $92.20, an amount owed to Greenwich Hospital of $6,000 and a claim from Carol Vurchio of $15,000. These Claims will be repaid in equal monthly payments over five years (except for the IRS claim which will be paid on the Effective Date). The total monthly payments for these unsecured Claims will be $350 per month.

**Treatment-**The Class 3 Allowed Unsecured Claims will be paid monthly in equal installments over five years from the Effective Date without interest.

**Right to Vote.** Class 3 is Unimpaired and not entitled to vote to accept or reject the Plan. To the extent there are any holders of claims that were listed in the Schedules as disputed that have failed to file a proof of claim, they will not be entitled to a distribution and are not included herein. Unless otherwise ordered by the Bankruptcy Court for cause, only the Debtor shall have standing to file and prosecute objections to Claims. All such objections shall be filed and served no later than 90 days after the Effective Date in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Any disputed Claims will be reserved until resolved.

## UNIMPAIRED STATUS OF THE MORTGAGE AND RIGHT TO CURE OVER TIME

Section 1124 of the Bankruptcy Code provides that:

A class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan-

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of

such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default-

> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365 (b)(2) of this title or of a kind that section 365 (b)(2) expressly does not require to be cured;

> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;

> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; …and

> (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

The Debtor has proposed in its Plan to pay the Secured Lender at the contract rate of the mortgage, plus the arrears payable over the remaining term of the mortgage (approximately 415 months). The component of the arrears attributable to interest will not bear interest, because under New York State law interest is not paid on interest, absent an agreement to the contrary. The portion of the arrears that comprise principal, escrow, penalties, and legal fees for the Mortgage will bear interest at the *Till* rate (prime plus 1.5%).  If any additional amounts are owed (either because the Plan is confirmed at a date later than anticipated or the amounts paid since the filing of the proof of claim by the Secured Lender were insufficient, or any other reason), they will be due and owing upon the maturity of the Mortgage.

Under the case *Ridgewood Sav. Bank v. DePietto (In re DePietto)*, No. 20-CV-8043 (KMK), 2021 U.S. Dist. LEXIS 144001 (S.D.N.Y. Aug. 2, 2021), in a similar set of facts, the District Court held that: (1) the secured creditor claim is unimpaired because the mortgage was cured under the plan repaying the arears over the balance of the life of the mortgage and (2) the terms of the contract applied to interest.  *See* **Exhibit E**. In *DePietto,* the District Court remanded the case to Bankruptcy Judge Robert D. Drain for the limited purpose of determining the portion

of the arrears that constituted principal (which would bear interest), but otherwise confirmed the case.

Here, the principal portion can be derived from the proof of claim filed by the Secured Lender (Claim No. 2). *See also In re Lennington*, 288 B.R. 802 (Bankr. C.D. Ill. 2003); *In re LaPorta,* 578 B.R. 792 (Bankr. N.D. Ill. 2017); and *In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986). Accordingly, the Mortgage is Unimpaired under the Plan.

## REPLACEMENT LIENS

The Secured Creditor shall receive replacement liens without further action on its part to the extent necessary to secure its interest against the Reorganized Debtor. The Secured Creditor shall be entitled to file all necessary documents to protect its secured interest and the Debtor will cooperate with all reasonable requests for this purpose.

## IMPLEMENTATION OF THE PLAN

Payments to holders of Allowed Claims under the Plan will be made by the Debtor/Reorganized Debtor from (a) Cash on hand as of the Effective Date; and (b) Cash realized from the Debtor's/Reorganized Debtor's wages and her husband's wages and income.

Professional fees for services rendered and expenses incurred by the Debtor's attorney subsequent to the Effective Date in connection with the Plan or the Debtor's/Reorganized Debtor's chapter 11 case may be paid by the Debtor without prior court approval to the extent that Section 1123(a)(6) of the Bankruptcy Code is applicable.

The Plan may be altered or modified by the Debtor at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, which authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements therein.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Executory Contracts and Unexpired Leases.** To the extent the Debtor is a party to any executory contracts or unexpired leases which have not otherwise been assumed or rejected prior to the Effective Date, the Confirmation Order shall constitute an Order authorizing the assumption of such Executory Contracts or unexpired leases pursuant to Section 365 of the Bankruptcy Code.

In the event any lease or executory contract is to be assumed that is not paid currently, the Debtor will, as a condition of assumption, cure the default by making payment of the amounts owed. Any party objecting to the assumption or cure amount shall have until ten days prior to the Confirmation Hearing date to oppose such assumption or cure amount. The Debtor is not aware of any executory contracts or unexpired leases on which it is a lessee and accordingly believes that he owes no cure amounts under Sections 365 of the Bankruptcy Code.

**This paragraph constitutes notice to any party having an executory contract or unexpired lease with Debtor, that Debtor will pay no cure amounts unless (a) the non-debtor party files and serves a statement setting forth the cure amount and objecting to the Plan on or before the date to object to Confirmation of the Plan or (b) the Court awards such cure amount.**

The Debtor does not have any executory contracts.

## RETENTION OF JURISDICTION

The Plan contains provisions providing for the retention of jurisdiction by the Bankruptcy Court to primarily enforce the Plan and implementation thereof through the sale of the Property as well as to determine all other matters pending on the date of confirmation and to issue the Debtor's discharge after the Plan is fully paid.

After the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction

-12-

until the bankruptcy case is closed to perform the following actions:

(a) Ensure that the Plan is fully consummated;

(b) Resolve all matters arising under or relating to the Plan;

(c) Allow, disallow, determine, liquidate or classify, any secured or unsecured claims;

(d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in the bankruptcy case;

(e) Resolve any motions or applications still pending prior to the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the provision of the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with the bankruptcy case; and

(g) Enter a Final Decree concluding the bankruptcy case.

## ACCEPTANCE BY THE IMPAIRED CLASSES

Under the Bankruptcy Code, the Plan may be confirmed if each Impaired class of Claims accepts the Plan and the Plan satisfies the other requirements of Section 1129(a) of the Bankruptcy Code. A Class is Impaired if the legal, equitable or contractual rights attached to the claim of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in Cash. **Here there are no Impaired classes and therefore no votes are required to confirm a Plan as long as the other criteria for confirmation exists under the Plan.**

## OTHER PLAN REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the

Bankruptcy Court will enter an order of Confirmation of the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner; (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code; (iii) the Debtor has proposed the Plan in good faith; (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan; (v) the Plan is in the "best interest" of all creditors, in that it provides as good a recovery to the Creditors as a liquidation under Chapter 7 of the Bankruptcy Code; (vi) the Plan is feasible; and (vii) the Plan has been accepted by the requisite number and amount of creditors in each class entitled to vote on the Plan or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test**. The so-called "best interest" test requires that each Impaired Claimant either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code.

In this case, the Debtor is paying all of her debts in full and accordingly, creditors will receive as least as much as they would have in a Chapter 7 liquidation.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor. Because the Debtor believes that he and her wife have adequate household income from and pension income wages to carry out the Plan and the Debtor believes he is likely to be able to consummate the Plan. The Debtor has sufficient household income to fund the Plan as set forth in the "Financial Projections of Debtor" attached as "**Exhibit B.**"

The following chart sets forth the anticipated monthly income and expense of Debtor

under the Plan.

| Type of Income/Expense | Monthly Amount |
|---|---|
| Wages (net) (Debtor and husband) | 9,500.00 |
| Husband's additional income | $3,500.00 |
| **Total Income** | **$13,000.00** |
| Mortgage Payments including Arrears | $5,926.50 |
| Unsecured Creditors Payment | $350.00 |
| All other living expenses | $ 5,470.00 |
| **Total Expenses:** | **$ 11,746.50** |
| Net | **$1,253.50** |
|  |  |

**Liquidation analysis**. Because all Creditors are being paid in full, Claimholders will receive at least as much as they would have in a hypothetical Chapter 7 case.

### Projected "Disposable Income" Test.

Pursuant to Section 1129(a)(15)(B) of the Bankruptcy Code, if the holder of an Allowed Unsecured Claim objects to the confirmation of the Plan, the Debtor will be required to demonstrate that the value of the property to be distributed under the Plan is not less than their projected disposable income for the five (5) year period following the Effective Date. Based upon (1) the fact that all Allowed Claims are being paid in full; and (2) the projections attached to this Disclosure Statement as "**Exhibit B**" showing payments by the Debtor over five years, the Debtor has met the Projected "Disposable Income" Test.

### Confirmation Without the Acceptance of Each Impaired Class.

In the event that all Impaired classes do not accept the Plan, the Bankruptcy Court may

nevertheless confirm the Plan under Section 1129(b) at the Debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. **Here, there are no impaired classes and accordingly no vote is required.**

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its claims or Interests. The Debtor asserts that the Plan meets these tests.

## CAUSES OF ACTION

The Debtor is not aware of any causes of action that the bankruptcy estate may have, including actions under Chapter 5 of the Bankruptcy Code. Nevertheless, he fully reserves her right to pursue any causes of action post-confirmation, and any setoff rights arising thereunder.

## FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

(a) The following is a summary of certain U.S. federal income tax consequences to the Debtor and to certain holders of Claims that are expected to result from implementation of the Plan. This discussion is based on the Internal Revenue Code, Treasury regulations in effect on the date of this Disclosure Statement and administrative and judicial interpretations thereof that are available on or before such date.   All of the following is subject to change which change could apply retroactively and could affect the federal income tax consequences described below.

There can be no assurance that the IRS will not take a contrary view to one or more of the issues discussed below. No ruling has been applied for or received from the IRS with respect to any of the tax aspects of the Plan and no opinion of counsel has been requested or received by the Debtor with respect thereto. The following summary is for general information only and does not purport to address all of the U.S. federal income tax consequences that may be applicable to any particular holder of a Claim. The tax consequences to holders may vary based upon the individual circumstances of each holder.

(b) In addition, this discussion does not address any aspect of local, state or foreign taxation, or any estate or gift tax consequences of the Plan. The following assumes that the Plan will be implemented as described in the Plan and does not address the tax consequences if the Plan is not implemented.

THE TAX CONSEQUENCES OF THE PLAN ARE POTENTIALLY COMPLEX AND SUBJECT TO SIGNIFICANT UNCERTAINTIES. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH THEIR OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

**Tax Consequences to the Holders of Claims**

(a) The federal income tax consequences of the Plan to a holder of a Claim will depend

upon several factors, including but not limited to: (i) whether the holder's Claim (or a portion thereof) constitutes a Claim for principal or interest; (ii) the origin of the holder's Claim; (iii) the type of consideration received by the holder in exchange for the Claim; (iv) whether the holder is a residence to the United States for tax purposes; (v) whether the holder has taken a bad-debt deduction or worthless-security deduction with respect to its Claim, and (vi) whether the holder receives distributions under the Plan in more than one taxable year.

(b) Generally, a holder of a Claim will recognize a gain or loss equal to the "amount realized" which is equal to the sum of the Cash and the fair market value of any other consideration received under the Plan in respect of a holder's Claim less its basis. The character of any recognized gain or loss (e.g., ordinary income or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in its hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim.

**HOLDERS OF CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.**

(c) Payors of interest, dividends and certain other reportable payments are generally required to withhold a percentage of such payments if the payee fails to furnish such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Post-Confirmation Debtor may be required to withhold a portion of any payments made to a holder of an Allowed Claim who does not provide its taxpayer identification number.

**Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns. To the extent that any holder of a Secured Claim that has had its Claim satisfied or discharged in full pursuant to the Plan or any agent for such Holder has filed or recorded publicly any liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date or completion of payments under the Plan, such holder (or the agent for such holder) shall take any and all steps requested by the Debtor, the Reorganized Debtor, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtor shall be entitled to make any such filings or recordings on such holder's behalf.

## DISCHARGE OF DEBTS

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Bankruptcy Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in Section 1141(d)(5) of the Bankruptcy Code. The Debtor will not be discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code, except as provided in Rule 4007 of the Federal Rules of Bankruptcy Procedure. In this case, since the Debtor recently received a discharge in chapter 7 she will not be entitled to a discharge.

## LIMITATION OF LIABILITY; INJUNCTION

To the extent permitted by Section 1125(e) of the Bankruptcy Code, upon the Effective Date, neither the Debtor nor her counsel or agents shall have incurred or shall incur any liability to any holder of a Claim or any other Person for any act or omission in connection with, or arising out of, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, gross negligence, self-dealing or breach of fiduciary duty. Nothing herein shall abrogate applicable disciplinary rules.

At the Confirmation Hearing, the Debtor will be seeking an injunction as of the Effective Date protecting the Debtor/Reorganized Debtor and her estate and assets, except as provided in the Plan, until the entry of an order by the Bankruptcy Court granting the Debtor a discharge upon performance of all her duties and obligations under the Plan. The injunction will be sought because under the Bankruptcy Code [11 U.S.C. §1141(d)(5)] where, as here, the debtor in a chapter 11 case is an individual, confirmation of the Plan does not discharge any debt provided for in the plan until the Bankruptcy Court grants a discharge upon completion of all payments under the plan. Therefore, at the Confirmation Hearing, the Debtor will request the Bankruptcy Court to enter a Confirmation Order providing that, as of the Effective Date, as to every holder of a debt or Claim against the Debtor, such holder shall be enjoined from interfering with the Debtor's/Reorganized Debtor's ability to carry out the terms of the Plan or enforcing any remedy against the Debtor or her estate with respect to any Claim. The order will further provide that in the event of a default by the Debtor/Post-Confirmation Debtor under the Plan, a Claimant may make an appropriate application to the Bankruptcy Court seeking relief from such injunction.

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN IN RELATION TO ANY CLAIM EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST THE DEBTOR ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTOR: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS

-21-

OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR INTEREST EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE AFFIRMATIVELY AND SPECIFICALLY CONSENTED TO BE BOUND BY THE PLAN.

### SALE OF THE PROPERTY

The Debtor reserves the right to sell the Property in the future and pay the mortgage in full.

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots or Provisional Ballots (if any) and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Bronson Law Offices, P.C., 480 Mamaroneck Ave., Harrison, NY 10528, attn.: H. Bruce Bronson, Esq. at 914-269-2530; hbbronson@bronsonlaw.net.

**DATED:**     Harrison, New York
              April 7, 2026

/s/ Regina Vurchio
Regina Vurchio

BRONSON LAW OFFICES, P.C.

By:      */s/ H. Bruce Bronson*
         H. Bruce Bronson
         Bankruptcy Counsel to the
         Debtor and Debtor-in-Possession

-23-